UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 07-23229-CIV-GOLD/WHITE
(Related Case No.: 06-20513-CR-GOLD)

ALAN GLAUBMAN,

     Petitioner,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION; CLOSING CASE

This CAUSE is before the Court on the Report and Recommendation filed by U.S. Magistrate Judge Patrick A. White [DE 32], to which Petitioner has filed an Objection [DE 33] and Respondent filed a supplemental Response [DE 34]. The Report recommends the denial of Petitioner's Motion to Vacate, which was timely filed pursuant to 28 U.S.C. § 2255. An evidentiary hearing was held on the Motion to Vacate before Magistrate Judge White on September 11, 2008. I have carefully reviewed the Report, the Objection, the transcript of the evidentiary hearing, the case files and the applicable law. For the following reasons, I adopt the Report and Recommendation and deny Petitioner's Motion to Vacate.

**I.    Background**

Petitioner was convicted of conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349 pursuant to a pre-indictment plea agreement that was entered into on December 22, 2005. An Information was charged against Petitioner on August 22, 2006. A change of plea hearing was held on October 6, 2006 and sentencing proceedings were held on December 20, 2006, pursuant to which Petitioner was sentenced to imprisonment for a

1

term of 78 months and a term of supervised release of three years. The plea agreement provided that "the applicable guideline range under all of the circumstances of the offenses committed by the defendant, before consideration of acceptance of responsibility...is Level 31" but did not translate what such an offense level would mean in terms of possible terms imprisonment [DE 1, Ex. I, at 7]. The plea agreement further provided that the government and the defendant will "jointly recommend that the Court impose a sentence within the advisory sentencing guideline range produced by application of the Sentencing Guidelines." Id. at 3. As reflected by the Pre-Sentence Investigation Report, as revised on December 13, 2006, the offense level was adjusted to 28 in view of Petitioner's acceptance of responsibility and timely decision to enter into a guilty plea. U.S.S.G. § 3E1.1(a), (b). The term of 78 months imprisonment imposed was the low-end of the advisory sentencing guideline range for offense level 28 and criminal history category 1.

Petitioner raises a number of claims in his Motion, all based on the alleged ineffective assistance of his trial counsel, Don S. Cohn. Petitioner's Objection contests the conclusions of the Report only as to the denial of Petitioner's third and seventh claim as presented in his Motion: that he was denied effective assistance of counsel, where his lawyer failed to ensure Petitioner was mentally competent to enter into a negotiated plea and attend both the change of plea and sentencing proceeding; and that Petitioner was unaware of the consequences of his plea because he was suffering from a mental condition which resulted in his guilty plea being unintelligent, unknowing, and involuntary.[1]

---

[1] The Report notes that there is an issue as to whether claim seven is a new, time-barred claim. Because the grounds for relief under these two grounds are materially the same, I have proceeded to analyze these two related claims together.

[DE 33 at 1]. At the evidentiary hearing before Magistrate Judge White, both Petitioner and his trial counsel testified, as did Petitioner's psychiatrist and Petitioner's appellate counsel who was retained to represent Petitioner in his post-conviction restitution hearings [DE 25].

## II.    Discussion

A defendant is considered competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and [if] he has a rational as well as factual understanding of the proceedings against him." *James v. Singletary*, 957 F.2d 1562, 1574 (11 Cir. 1992) (citations omitted). Further, to the extent Petitioner argues, he was not mentally competent to sign the plea agreement in December 2005, such an argument is unsupported by the testimony of Petitioner's psychiatrist. As the Report sets forth with detailed accuracy, Petitioner's psychiatrist, who only treated Petitioner in 2002 and once in 2006, testified that medication he prescribed in no way impaired Petitioner's ability to know that he was facing incarceration, and that despite being depressed and anxious, was nonetheless coherent. I find no evidence in the record to suggest Petitioner failed to meet this standard at any time during the criminal proceedings against him. Further statements at the time of a plea colloquy are given a strong presumption of truth. *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977); *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Therefore, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). At the plea hearing, Petitioner testified under oath that he was not suffering from any mental illness, that the drugs he had taken did not effect his

3

competency, and that he was able to understand the nature of the day's proceedings. [DE 1, Ex. D at 4-5]. Petitioner testified that nothing was affecting his ability to comprehend the proceedings (*id.* at 5.) and repeatedly affirmed to the Court that he understood what was going on. Glaubman unwaveringly answered in the affirmative. (*Id.* at 5, 8, 9, 10, 11, 13.) Glaubman further stated under oath that he had fully discussed the charges and the case in general with his attorney; had discussed the Government's evidence with his attorney; was fully satisfied with the counsel, representation, and advice he received from his attorney; had a copy of the plea agreement in front of him and had read it before he signed it; and had reviewed the factual basis for the plea with his attorney (*id.* at 5, 14, 15). The Court discussed the Advisory Sentencing Guidelines with Petitioner, including the fact that they will be considered at Petitioner's sentencing hearing. (*Id.* at 9-10.) The Court clearly explained to Petitioner – and Petitioner stated that he understood – that the Court was not required to accept sentencing recommendations made by the parties and could give him the maximum sentence allowed by law, a term of up to 20 years in prison. (*Id.* at 8-9). Therefore, I conclude Petitioner has not carried his burden to show he was in fact mentally incompetent to enter into a negotiated plea and attend both the change of plea and sentencing proceedings.

The thrust of Petitioner's Objection is that his guilty plea was unintelligent, unknowing, and involuntary because (1) Petitioner had entered into the plea agreement ten months before he was charged; (2) did not know that the applicable guideline range as set forth in the plea agreement would translate into a term of imprisonment. Petitioner's first reason is rejected out of hand. Petitioner has offered no legal support for his first argument that an "atypical chronology" as to when the plea agreement was signed bears any

4

relevance to Petitioner's mental state when entering into the plea agreement. [DE 27 at 2]. To the extent Petitioner argues that due to the atypical chronology that Petitioner's counsel was less likely to have reviewed the terms of the plea agreement with Petitioner as carefully, such a contention has no evidentiary support. *Machibroda v. United States*, 368 U.S. 487 (1962) (the presentation of conclusory allegations, unsupported by specifics, is subject to summary dismissal, as are contentions which in the face of the record are wholly incredible).

As to the second argument that Petitioner was unaware of the term of imprisonment associated with his plea agreement, Petitioner argues that he was under the impression that under the plea agreement, he would be receiving probation. The Eleventh Circuit has held that a defendant cannot enter into a knowing and voluntary change of plea without "knowledge of all its important terms and conditions and consequences." *United States v. Williams*, 396 F.3d 1340, 1342 n. 2 (11th Cir. 2005); *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (the defendant's underlying interest is "in having, before he judges the desirability of the plea bargain, a general knowledge of the possible legal consequences of facing trial."). I am persuaded by Magistrate White's favorable credibility finding as to Petitioner's counsel [DE 32 at 21], who testified at the evidentiary hearing (and had similarly represented at the change of plea hearing) that he reviewed and explained the terms of the plea agreement to Petitioner. Mr. Cohn testified he spent many hours reviewing the Government's evidence with Petitioner and possible defenses in the case [DE 25, at 57-59, 60, 101], that he had numerous conversations with Petitioner about the plea agreement, reviewed each and every paragraph of it with him, and made clear to him what the terms meant [*id.* at 78, 106], and that he specifically discussed what advisory

5

guidelines range meant in terms of a potential prison sentence [*id.* at 71]. Accordingly, I conclude that while Petitioner may have believed that probation was a *possibility* — the plea agreement did not impose any binding limitations on the Court's ability to impose a lenient sentence — he was equally aware that imprisonment was the far more likely outcome, especially in view Petitioner's explicit acknowledgment of the possibility that the Court could impose a maximum sentence of twenty years imprisonment. Mere disappointment that a court chose not to impose a lenient sentence is not the basis for a motion to vacate sentence.

Petitioner's arguments to the contrary are unpersuasive. Petitioner points to evidence that a copy of the plea agreement was sent to him via facsimile the evening prior to his change of plea hearing. Although Petitioner seems to suggest in advancing this argument that Petitioner did not have adequate opportunity to review the terms of the agreement, as discussed above, the record plainly demonstrates that Petitioner had previously had the opportunity to review and discuss it with his attorney. Finally, Petitioner argues that statements requesting leniency at the sentencing hearing demonstrated he was unaware of the consequences of his plea agreement.[2]   However, a request for

---

[2] Specifically, he points to the following exchange:

Glaubman:   I just wanted to let you know I am very sorry that these people got hurt. That was not my intent. I've never been in trouble before in my life, and I hope that you will consider probation for me because I'm a law-abiding citizen and I've never been in trouble before. In the past you can see all my history. I cam from a good family, never been in trouble, and I deserve a chance.

The Court:   Well, Mr. Glaubman, probation is not an option. This is a serious crime.

Glaubman:   What about house arrest?

The Court:   You have to listen carefully. Probation is not an option. Home detention is not an option. You're going to prison, sir. This is a

6

leniency, without more, cannot be viewed as a lack of understanding of the terms of the plea agreement. I am satisfied, based on the record in this case, that Petitioner had the requisite mental competency to enter into the plea agreement. Therefore, there can be no finding of ineffective assistance of counsel on those grounds. Accordingly, it is hereby

ORDERED and ADJUDGED that

1. The Report and Recommendation [DE 32] is ADOPTED.

2. Petitioner's Motion to Vacate Sentence [DE 1] is DENIED.

3. This case is CLOSED.

DONE and ORDERED in Chambers in Miami, Florida, this _15_ day of September, 2009.

THE HONORABLE ALAN S. GØLD
UNITED STATES DISTRICT JUDGE

cc:
All counsel of record
U.S. Magistrate Judge Patrick A. White

---

serious crime. You entered a plea agreement that you signed that agreed to a sentence at the low end of the advisory guidelines. I'm honoring that plea agreement. I could go substantially higher here if I looked into this issue without the benefit of the plea agreement, so I just want you to know outright that this is not something that you're going to be able to walk away from. Mr. Cohn, have you not talked to him about this?

Cohn:       Yes, I have, Judge. Yes, I have.
The Court:  Okay.

[DE 1, Ex. G at 6-7].

7